IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI,<br><br>    Plaintiff,<br><br>v.<br><br>WACHOVIA, BANK, N.A., n/k/a WELLS FARGO BANK, N.A.<br><br>Serve:   **HOLD SERVICE**<br><br>         1 N. Jefferson Ave.<br>         St. Louis, MO 63103<br><br>WACHOVIA SECURITIES, LLC,<br><br>Serve:   **HOLD SERVICE**<br><br>         CSC-Lawyers Incorporating<br>              Service Co.<br>         221 Bolivar St.<br>         Jefferson City, MO 65101<br><br>    Defendants. | Case No. 1022-CC10460<br><br>Division No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## PETITION FOR MONEY DAMAGES AND OTHER RELIEF

Plaintiff Higher Education Loan Authority of the State of Missouri, for its Petition for Money Damages and Other Relief, states as follows:

**Parties and Background**

1. Plaintiff Higher Education Loan Authority of the State of Missouri ("MOHELA") is a public instrumentality and body politic and corporate duly organized

and existing under the laws of the State of Missouri with its headquarters and principal place of business located at 633 Spirit Drive, Chesterfield, St. Louis County, Missouri.

2. At all times relevant to this Petition, Defendant Wachovia Bank, N.A., now known as Wells Fargo Bank, N.A., is a national banking association legally chartered in North Carolina, which is transacting and doing business in the State of Missouri and in the City of St. Louis, Missouri. Wachovia Bank, N.A. has locations throughout Missouri, including in the City of St. Louis. Moreover, Wachovia Bank, N.A. made and entered into contracts described herein within the State of Missouri and the City of St. Louis, Missouri and committed the tortious acts described herein within the State of Missouri and the City of St. Louis, Missouri. The Court thus has jurisdiction over Wachovia Bank, N.A.

3. At all times relevant to this Petition, Defendant Wachovia Securities, LLC, now known as Wells Fargo Advisors, LLC, is a Delaware Limited Liability Company registered as a Foreign Limited Liability Company in the State of Missouri and with its principal place of business in the City of St. Louis, Missouri. Moreover, Wachovia Securities, LLC made and entered into contracts described herein within the State of Missouri and the City of St. Louis, Missouri and committed the tortious acts described herein within the State of Missouri and the City of St. Louis, Missouri. The Court thus has jurisdiction over Wachovia Securities, LLC.

4. Venue in St. Louis City is proper under R.S.Mo. § 508.010.

5. Under R.S.Mo. §§ 173.350-.455, MOHELA is authorized to issue bonds and other forms of indebtedness (1) to raise funds to purchase student loan notes and/or to finance student loans and (2) to refund any outstanding bonds or indebtedness.

6. MOHELA issues both taxable and tax-exempt bonds within trusts to purchase and finance loans. The student loans are then held in the trust as collateral for the bonds.

7. In November 2005 and April 2006, MOHELA issued Tax-Exempt Variable Rate Demand Student Loan Revenue Bonds totaling $383,000,000 ("Bonds") to finance and purchase student loans.

8. The Bonds, the proceeds from the sale of the Bonds, and the student loans purchased with the proceeds were placed in a trust governed by a Trust Indenture dated November 1, 2005 between MOHELA and Wells Fargo Bank, N.A. ("Wells Fargo"), a Supplemental Trust Indenture dated November 1, 2005 between MOHELA and Wells Fargo, and a Supplemental Trust Indenture dated April 1, 2006 between MOHELA and Wells Fargo (collectively referred to as the "2005 Trust"). Under the 2005 Trust, Wells Fargo was named the trustee and acted as trustee at all relevant times. The 2005 Trust is governed by the laws of the State of Missouri.

9. These tax-exempt variable rate demand Bonds were sold to investors, who could tender the Bonds with one week's notice. Any tendered Bonds were to be resold by certain designated Remarketing Agents, who were obligated under the 2005 Trust and under Remarketing Agreements between the agents and MOHELA to set an interest rate for the Bonds every Wednesday.

10.  A.G. Edwards & Sons, Inc. was a Remarketing Agent of the 2005 Trust Bonds under Remarketing Agreements with MOHELA dated November 1, 2005 and April 1, 2006 (attached hereto as Exhibits 1 and 2). Defendant Wachovia Bank, N.A. acquired A.G. Edwards & Sons, Inc., and, as a result, Wachovia Bank, N.A. and/or one of its affiliates, including Defendant Wachovia Securities, LLC (collectively referred to herein as "Wachovia"), became and/or acted as a Remarketing Agent for the Bonds under the Remarketing Agreements.

11.  Pursuant to the Remarketing Agreements and the 2005 Trust, Wachovia was obligated to set the weekly interest rate by taking into account market conditions.

12.  On or about January 1, 2009, Wells Fargo & Co., parent of Wells Fargo Bank, N.A., acquired Wachovia Bank, N.A. and its affiliates. As of January 1, 2009, Wachovia and Wells Fargo were affiliated entities with a common owner. On information and belief, in 2010, Wachovia Bank, N.A. was fully merged into Wells Fargo Bank, N.A.

13.  Under the 2005 Trust and related agreements, Depfa Bank plc ("Depfa"), an Irish chartered institution, agreed to provide liquidity for the Bonds, meaning that Depfa would purchase any Bonds tendered by bondholders.

14.  Under the 2005 Trust and related agreements, MBIA Insurance Corporation ("MBIA"), a New York corporation, issued a bond insurance policy that guaranteed the payment of the principal and interest on all the Bonds.

15.  The Bonds issued by MOHELA under the 2005 Trust are usually attractive to both investors (tax-exempt bonds with liquidity and insurance lowers risk) and issuers

4

(low rates of interest). MOHELA has numerous trust estates like the 2005 Trust, and each trust estate is non-recourse to MOHELA pursuant to Missouri law and pursuant to the bond documents creating each trust estate. With these trust estates, the interest rate paid is generally lower than the interest rates paid by students on their loans, thereby resulting in profits being generated, which profits, in turn, can be used by MOHELA to fund further loans, to forgive loans, or to be used for other lawful purposes.

16. The Bonds had a 35-year maturity and were sold in $100,000 denominations. The Bonds performed as expected, but, when the financial and credit crisis began in late 2007 and continued through 2008, investors began to tender their Bonds to Depfa to purchase because of the downgrades in the ratings of both Depfa and MBIA. By July 2008, Depfa had purchased all the Bonds and held them as liquidity provider Bonds, which, under Depfa's Standby Bond Purchase Agreement with MOHELA and Depfa was paid an interest rate of 4.5% on the Bonds it held until the Bonds were redeemed by MOHELA or resold by the Remarketing Agents.

17. The Standby Bond Purchase Agreement provides that the lowering of the rating of the bond insurer (MBIA) by Moody's below a "Baa3" rating is an event of default and an Automatic Termination Event. In the event of such an occurrence, Depfa's obligation to provide liquidity ceased, and the liquidity facility of Depfa was not in place.

18. Pursuant to the Remarketing Agreements, Wachovia agreed to perform the duties of Remarketing Agent for the 2005 Bonds as set forth in the Remarketing Agreements and the 2005 Trust.

5

19. Pursuant to the Remarketing Agreements, Wachovia was obligated to settle all transactions as Remarketing Agent pursuant to customary industry practice and was obligated to make all books and records relating to such transactions available to MOHELA.

20. Pursuant to the Remarketing Agreements, Wachovia agreed to use its best efforts to remarket the 2005 bonds and to set the interest rate on the bonds. The 2005 Trust further required Wachovia to determine and set the interest rate that "would cause [the Bonds] to have a market value as of the date of determination equal to the principal amount thereof, plus accrued interest, taking into account prevailing market conditions."

21. The Remarketing Agreements provided that Wachovia could cease remarketing the Bonds if an adverse change in the bond insurer or liquidity facility occurred or if a downward revision of any rating related to the Bonds occurred.

**Disputed Transactions**

22. On or about February 18, 2009, MBIA announced it had undergone a restructuring and issued a "cut through" insurance policy to a new company, National Public Finance Guarantee Corporation, in an attempt to meet MBIA's rating requirements. On that same date, MBIA's rating was downgraded by Moody's to B3, which, according to Depfa, was an event of default and an automatic termination event with respect to Depfa's liquidity facility.

23. As Remarketing Agent, Wachovia knew or should have known about the downgrading of MBIA in February 2009.

24. In or about the late afternoon of April 8, 2009, MOHELA learned that Wachovia was remarketing $40 million of the Bonds, specifically the 2005 Trust's Tax-Exempt Variable Rate Demand Student Loan Revenue Bonds, Series 2005 C-E and Series 2006 C and D ("Remarketed Bonds").

25. Wachovia set the interest rate for the Remarketed Bonds at 8.08%.

26. For the same week (April 8, 2009), two other Remarketing Agents of the Bonds, Merrill Lynch and Banc of America, set their interest rate for these Bonds at 0.75%.

27. Likewise, for the week of April 8 through 15, 2009, bonds comparable to the Remarketed Bonds that were being remarketed by Wachovia and/or Well Fargo had interest rates for these comparable bonds set at a range of 0.32% to 1.51% (with an average of 0.64%).

28. MOHELA opposed the remarketing of the Remarketed Bonds at such a high interest rate and requested that the closing not occur.

29. On or about April 13, 2009, the sale of the Remarketed Bonds closed, and Wells Fargo, as Trustee, released the Remarketed Bonds to an unnamed purchaser.

30. On or about April 17, 2009, Depfa gave oral notice that its liquidity facility was not in place as of February 18, 2009 because of the downgrade of MBIA's rating and the occurrence of an event of default and automatic termination event. On or about April 22, 2009, Depfa gave written notice of the same.

31. Depfa claimed there was no liquidity facility in place when the sale of the Remarketed Bonds closed on April 13, 2009.

32. At the time of the sale of the Remarketed Bonds, those bonds were liquidity provider bonds (owned by Depfa) and thus, pursuant to the 2005 Trust, the Bonds "shall be released only after the Trustee . . . has received Electronic Notice from [Depfa] that the Liquidity Facility has been reinstated by the amount of the funds drawn to purchase Liquidity Provider Bonds."

33. The Remarketing Agreements and the 2005 Trust provide that Wachovia "shall not" remarket the Bonds if an event of default took place, Depfa's liquidity facility was not in place or Depfa's obligation to repurchase bonds was terminated or suspended.

34. Before releasing the Remarketed Bonds on April 13, 2009, Electronic Notice that the liquidity facility had been reinstated was not obtained by Wachovia, despite the clear obligation to do so.

35. After the sale of the Remarketed Bonds, MOHELA repeatedly demanded to know the identity of the buyer of the Remarketed Bonds, but Wachovia refused to identify the buyer despite its obligation to provide such information.

36. From April 13, 2009 to October and November 2009, Wachovia continued to set the weekly interest rate on the Remarketed Bonds at 6.0% or higher until the 2005 Trust was restructured. Indeed, Wachovia set the interest rate at 6.0% on July 16, 2009, and did not change the rate before the 2005 Trust was restructured.

37. In that same timeframe (April to November 2009), two other Remarketing Agents of the Bonds set the interest rates at a range of 0.42% to 0.80%. Other comparable bonds were remarketed at a range of 0.29% to 0.70% in this same timeframe.

8

38. From in or about April 2009 through October 2009, MOHELA requested, both orally and in writing, that Wachovia explain its formula, process, methodology or other means that Wachovia utilized in setting the interest rates on the Remarketed Bonds. Wachovia refused and has continued to refuse to give any such meaningful explanation.

## COUNT I – BREACH OF CONTRACT

39. MOHELA hereby incorporates the allegations of Paragraphs 1 through 38 by reference as if fully set forth herein.

40. Under the Remarketing Agreements, Wachovia was obligated to remarket the Bonds under the terms and conditions set forth in the Remarketing Agreements and the 2005 Trust.

41. MOHELA performed all its obligations owed to Wachovia under the Remarketing Agreements and the 2005 Trust.

42. Wachovia breached the Remarketing Agreements by:

(a) Selling the Remarketed Bonds when Depfa's liquidity facility was not in place, when there was no attempt to confirm that the liquidity facility was in place, and when a possible event of default under the Remarketing Agreements and the 2005 Trust had occurred;

(b) Selling the Remarketed Bonds without taking into account prevailing market conditions, industry custom, and the downgrading and restructuring of MBIA;

(c) Setting the interest rate on the Remarketed Bonds without taking into account prevailing market conditions and industry custom and otherwise failing to use its best efforts to set the interest rate;

(d)     Setting the interest rate on the Remarketed Bonds that was substantially higher than the market and that had no relation to any formula, process or methodology; and

(e)     Failing to disclose to MOHELA the identity of the buyer of the Remarketed Bonds.

43.     As a direct result of Wachovia's breaches, MOHELA has been damaged in excess of $25,000, including, but not limited to, paying excessive interest on the Remarketed Bonds and by delays caused in MOHELA's efforts to refinance the 2005 Trust.

WHEREFORE, Plaintiff prays that this Court make and enter Judgment against Defendants for monetary damages in such amount as may be proven at trial and as allowed by law; award Plaintiff a judgment for its costs and expenses incurred herein and as a result of Defendants' conduct as required or otherwise permitted by law; order Defendants to disgorge any profits and fees received as a result of their conduct; and make and enter such other and further Orders as are just and proper in the premises.

## COUNT II – BREACH OF FIDUCIARY DUTY

44.     MOHELA hereby incorporates the allegations of Paragraphs 1 through 43 by reference as if fully set forth herein.

45.     The Remarketing Agreements name Wachovia as MOHELA's agent with respect to remarketing of the Bonds, and the scope of the agency is defined by the Remarketing Agreements and the 2005 Trust.

46. As an agent, Wachovia was in a fiduciary relationship with MOHELA with respect to matters within the scope of the agency and owed the following fiduciary duties to MOHELA:

(a) To remarket the Bonds in compliance with the Remarketing Agreements and the 2005 Trust and to not remarket the Bonds without a liquidity facility in place;

(b) To remarket the bonds and set the interest rate on the Bonds according to market conditions, industry custom and best practices;

(c) To refrain from self-dealing and conflicts of interest; and

(d) To follow the express instructions given by MOHELA in accord with the Remarketing Agreements and the 2005 Trust.

47. Wachovia breached its fiduciary duties owed to MOHELA by:

(a) Selling the Remarketed Bonds without knowledge or confirmation of Depfa's liquidity facility being in place;

(b) Selling the Remarketed Bonds without taking into account prevailing market conditions, industry custom, and the downgrading and restructuring of MBIA;

(c) Setting the interest rate on the Remarketed Bonds without taking into account prevailing market conditions and industry custom and otherwise failing to use its best efforts to set the interest rate;

(d) Setting the interest rate on the Remarketed Bonds that was substantially higher than the market and that had no relation to any formula, methodology or calculation;

(e) Failing to disclose the identity of the buyer of the Remarketed Bonds;

11

(f)     Failing to adhere to MOHELA's request that the sale of the Remarketed Bonds not be completed;

(g)     Failing to comply with MOHELA's demand to provide the formula, process, or methodology used to set the interest rate on the Remarketed Bonds;

(h)     Engaging in self-dealing by, on information and belief, selling the Remarketed Bonds to a purchaser that was related to and affiliated with Wachovia and Wells Fargo and by benefitting the buyer of the Remarketed Bonds at the expense of MOHELA.

48.     But for these breaches of fiduciary duties, the sale of the Remarketed Bonds would not have occurred, and/or the interest rates for the Remarketed Bonds would not have been set at the excessive rates.

49.     As a direct and proximate result of Wachovia's breaches of its fiduciary duties, MOHELA has been damaged in excess of $25,000, including, but not limited to, paying excessive interest on the Remarketed Bonds and by delays caused in MOHELA's efforts to refinance the 2005 Trust.

50.     Wachovia's breaches of its fiduciary duties were outrageous because of Wachovia's evil motive and/or its reckless indifference to the rights of Plaintiff and others, and Plaintiff is therefore entitled to punitive damages.

WHEREFORE, Plaintiff prays that this Court make and enter Judgment against Defendants for monetary and punitive damages in such amount as may be proven at trial and as allowed by law; award Plaintiff a judgment for costs and expenses incurred herein and as a result of Defendants' conduct as required or otherwise permitted by law; order

Defendants to disgorge any profits and fees received as a result of their conduct; and make and enter such other and further Orders as are just and proper in the premises.

## COUNT III – NEGLIGENCE

51.  MOHELA hereby incorporates the allegations of Paragraphs 1 through 50 by reference as if fully set forth herein.

52.  As Remarketing Agent, Wachovia owed a duty of care to MOHELA with respect to remarketing the Bonds.

53.  Prior to the sale of the Remarketed Bonds, Wachovia breached its duty to MOHELA and was grossly negligent by failing to confirm whether Depfa's liquidity facility was still in place at the time of remarketing, by failing to ascertain facts that a responsible agent would have discovered before remarketing, and by failing to remarket the Bonds in accord with industry practice.

54.  Wachovia further breached its duty to MOHELA and was grossly negligent by setting the interest rate on the Remarketed Bonds at an excessive level and by failing to take market conditions and data, industry standards and best practice into account in setting the interest rate.

55.  As a direct and proximate result of Wachovia's gross negligence and breaches of its duty of care, MOHELA has been damaged in excess of $25,000, including, but not limited to, paying excessive interest on the Remarketed Bonds and by delays caused in MOHELA's efforts to refinance the 2005 Trust.

WHEREFORE, Plaintiff prays that this Court make and enter Judgment against Defendants for monetary damages in such amount as may be proven at trial and as

allowed by law; award Plaintiff a judgment for costs and expenses incurred herein and as a result of Defendants' conduct as required or otherwise permitted by law; and make and enter such other and further Orders as are just and proper in the premises.

### Jury Trial Demanded

57. Plaintiff demands a jury trial on all issues triable to a jury.

KOHN, SHANDS, ELBERT,
GIANOULAKIS & GILJUM, LLP

*/s/ Gianoulakis*

John Gianoulakis # 18194
Kevin Anthony Sullivan # 55140
1 N. Brentwood Blvd., Suite 800
St. Louis, MO 63105
(314) 241-3963
(314) 241-2509 (fax)
jgianoulakis@ksegg.com
ksullivan@ksegg.com

Attorneys for Plaintiff